**Tagged Opinion**

ORDERED in the Southern District of Florida on August 4, 2009

John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

**WILLIAM A. DATO**

    Debtor.
_____/

**GENERAC POWER SYSTEMS, INC.,**

    Plaintiff,

vs.

**WILLIAM A. DATO,**
    Defendant.
_____/

Case No.: 08-18846-JKO

Chapter 7

Adv. Proc. No.: 08-01702-JKO

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** came before the court on May 7, 2007, upon William A. Dato's ("Defendant" or "Dato") Motion to Dismiss Second Amended Complaint (the "Motion") [DE 41]. In light of Generac Power Systems, Inc.'s ("Plaintiff" or "Generac") failure to state a claim upon

which relief may be granted, the Motion is granted.

## FACTS

### 1. Procedural history

On June 27, 2008, the Defendant filed a voluntary petition for bankruptcy relief under Chapter 7. *See* [DE 1] in the main case. On October 14, 2008, Generac commenced this adversary proceeding against the Defendant. *See* [DE 1]. On November 12, 2008, the Defendant filed a Motion to Dismiss Adversary Proceeding (the "First Motion to Dismiss") [DE 10], to which the Plaintiff filed a Response [DE 15] and an Amended Complaint ("First Amended Complaint") [DE 16] contemporaneously on December 5, 2008. The First Amended Complaint consisted of two counts: the first count relied on 11 U.S.C. §727(a), and the second on 11 U.S.C. §523(a)(2). On January 22, 2009, the court issued an order [DE 26], which granted the First Motion to Dismiss, dismissing count one with prejudice and giving leave to amend count two. Generac filed a Second Amended Complaint ("Complaint") [DE 32] on February 3, 2009. The Defendant then filed the Motion on February 23, 2009. A hearing regarding this Motion was held on May 7, 2009. At that hearing, I requested that the parties further brief the issue as to the legal interpretation of the phrase, "respecting the Debtor's...financial condition", found in 11 U.S.C. §523(a)(2). The Plaintiff did so on May 21, 2009, [DE 54] and the Defendant submitted a Reply on May 29, 2009. [DE 56].

### 2. Facts as alleged by Plaintiff

Dato owned and operated Complete Power Solutions, LLC ("Complete Power"), through which he sold, installed and provided maintenance for Generac's generators. The business relationship between Complete Power and Generac began in 2005. Through this business relationship, Generac would periodically provide generators to Complete Power on credit. To

provide assurances to Generac, in the fall of 2006, Dato signed a personal guaranty, and Complete Power granted Generac a security interest in all of Complete Power's inventory, including after-acquired property; the security interest was duly perfected by the filing of a UCC-1 financing statement. In late 2006, Complete Power, and Dato as the guarantor, first began to fall behind on the payments to Generac. Through a series of conversations, both telephonic and in-person, Dato convinced Generac to enter into an agreement on August 28, 2007, which altered the terms of the financing payments to Generac (the "Agreement"). *See* "Exhibit A" attached to Second Amended Complaint. This Agreement allowed for a more lenient repayment schedule. Generac alleges that Dato "fraudulently induced Generac" to enter into the Agreement, causing Generac to "forbear from pursuing Generac's legal remedies against Dato," relating to Dato's personal guaranty and the security interest in Complete Power's inventory. Second Amended Complaint at 6.

## DISCUSSION

### 1. Legal standard for dismissal of adversary complaint

When a defendant files a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), made applicable under Bankruptcy Rule 7012, the Court must determine if the Plaintiff in the complaint has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). Plaintiffs must "raise a right to relief above the speculative level" and "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 569. A court "weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at 583 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)). Along with the complaint itself, the Court may consider exhibits attached to the complaint that are "central to the plaintiff's claim." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).

### 2. Section 523(a)(2) of the Bankruptcy Code

Generally speaking, exceptions to dischargeability are construed strictly against the creditor and liberally in favor of the debtor, in order to accomplish the "fresh start" goal of bankruptcy. *In re Walker,* 48 F.3d 1161 (11th Cir. 1995). However, this liberal application of the Bankruptcy Code is meant to protect debtors "only in those cases where there is no intent to violate its provisions." *In re Garman*, 643 F.2d 1252, 1257 (7th Cir.1980). With this principle in mind, I must interpret the statute (11 U.S.C. §523(a)(2)) upon which the Plaintiff bases its claim.

The Complaint seeks to state a claim for nondischargeability under 11 U.S.C. §523(a)(2)(A). The pertinent part of section 523(a)(2) reads as follows:

> A discharge under...this title does not discharge an individual debtor from any debt... to the extent obtained by--
>
> **(A)** false pretenses, a false representation, or actual fraud, other than a statement *respecting the debtor's or an insider's financial condition;*
>
> **(B)** use of a statement in writing
>     (i) that is materially false;
>     (ii) *respecting the debtor's or an insider's financial condition*
>     (Iii) on which the creditor...reasonably relied

11 U.S.C. § 523(a)(2) (emphasis added).

It is agreed by both parties, and stated clearly in the Congressional Record of the floor

discussion in contemplation of the 1978 Bankruptcy Code enactment, that sections 523(a)(2)(A) and (B) are intended to be "mutually exclusive". *In re Seabourne,* 106 B.R. 711, 713-14 (Bankr. M.D. Fla. 1989) (citing 124 Cong. Rec. H11095-96 (daily ed. Sept. 28, 1978)). That is to say, if a debtor's particular false representation is deemed to be "respecting [his] financial condition," the claim can only be raised under section 523(a)(2)(B), and consequently must show a *writing*. It cannot be brought under section 523(a)(2)(A) in the alternative. Because of this relationship, the broadness or narrowness with which one defines "financial condition" will determinably grow or shrink the world of representations that would require a *writing* in order to qualify for nondischargeability under section 523(a)(2). As a threshold issue, I must determine whether the alleged fraudulent misrepresentations in this case fall under the "financial condition" exception to section 523(a)(2)(A). If they do, then they must be brought as claims under section 523(a)(2)(B) and not (A), and, consequently, must show a writing. Because no writing has been alleged in this case, if I determine the representations in this case to be respecting the Debtor's financial condition, the Complaint would fail to adequately state a claim under section 523(a)(2), and the Motion would therefore be granted.

### 3. The "strict view" vs. "broad view" of financial condition

The term "financial condition" is not defined in the Bankruptcy Code. *Beneficial Nat'l Bank v. Priestley (In re Priestley),* 201 B.R. 875, 882 (Bankr. D. Del. 1996). As such, two views have developed in the time since the enactment of the Bankruptcy Code in 1978. Proponents of the so-called "broad view" define statements respecting financial condition to encompass "statements concerning the condition or quality of a *single asset or liability* impacting on the debtor's financial picture." *In re Priestley,* 201 B.R. at 882. (emphasis added) The "strict

view," on the other hand, reads this language to be limited to representations that "purport to set forth the debtor's *net worth* or *overall* financial condition." *In re Kirsh,* 973 F.2d 1454 (9th Cir. 1992)(emphasis added); *See also In re Seabourne,* 106 B.R. 711 (Bankr. M.D. Fla. 1989); *Brigadier Homes & U.S. Homes Acceptance Corp v. Hert,* 81 B.R. 638 (Bankr. N.D. Fla. 1987). By way of example, a representation about the likelihood of collecting on a single account receivable claim might constitute a representation of a financial condition under the broad view, whereas the strict view would require something more like a traditional financial statement (e.g. balance sheet, income statement, etc...). The 11th Circuit Court of Appeals has yet to rule on this discrete issue of law. To determine the role Congress intended for each section to play, I look to the history of the statute.

### 4. Congressional intent behind section 523(a)(2)(B)

The intention of section 523(a)(2)(B) was to deal with a specific abusive lending practice common in the years leading up to enactment of the new Bankruptcy Code in 1978. *In re Alicia,* 230 B.R. 492, 503 (Bankr. S.D.N.Y 1999). The practice would proceed as follows: Lenders would have borrowers disclose their financial condition as part of their application for credit, and then induce the borrowers to "certify[] the completeness of the form," despite the "inadequate space provided in the lender's disclosure form." *Id.* The writing requirement in §523(a)(2)(B) was expected to place a burden on such lenders who intended to "trick[] the debtor into presenting a false picture of his overall financial condition." *Id.* at 503-04. Working in cooperation with the writing requirement, section 523(a)(2)(B)(iii) added that the lender must have "reasonably relied" on the information presented by the debtor, creating a heightened objective standard to which these particularly deceitful creditors would be held. *Id.* at 503.

Hence, by Congress' design of the statute, if the court were ever to see a section 523(a)(2) motion to prevent the discharge of certain debt resulting from such circumstances, the court would also be presented with a written copy of this so-called "complete" financial picture upon which the unscrupulous lender had purportedly *reasonably* relied.

Far from merely protecting debtors from this particular lending practice, the "broad view" of financial condition has the effect of creating a far-reaching statute of frauds, requiring writings for practically all would-be claims under section 523(a)(2). Likely, an overly broad definition could have the effect of "swallowing up" section 523(a)(2)(A) entirely, allowing debtors to make verbal misrepresentations with impunity, giving defrauded creditors little recourse upon the debtor's bankruptcy. *Alicia* 230 B.R. at 504. In contrast, the "strict view" would limit the reach of section 523(a)(2)(B) only to instances where a borrower is presenting information intended to pass as an overall view of his financial condition, as contemplated by Congress to deal with the scenario just described. "The better rule decides cases on their merits, rather than on the construction of an ambiguous statutory phrase that grants a fresh start without regards to the honesty of the debtor." *Id.* To interpret the language broadly would be to "compel an odd result, making it unreasonable to believe that the Congress intended such an outcome." *In re Sancousy,* 136 B.R. 20 (Bankr. D.N.H. 1992) (citing *Public Citizen v. Department of Justice,* 491 U.S. 440, 453-54 (1989). Accordingly, I choose to adopt the so-called "strict view" of "respecting the debtor's or insiders financial condition" under section 523(a)(2).

### 5. Applying the "strict view" to the facts of this case

With an understanding of the relative reach of sections 523(a)(2)(A) and (B), I can apply the facts of this case to the strict view of financial condition. The Complaint alleges

misrepresentations regarding 1) the size of, and the likelihood of collecting on, Complete Power's receivable from Home Depot, and 2) Complete Power's continued title to, and ownership of, certain generators it purchased from Generac on credit. *See* Second Amended Complaint 4 & 6. These alleged misrepresentations are regarding a few single assets of the Debtor, and do not rise to the level of a representation of the Debtor's *overall* financial condition, as required by the strict view. Accordingly, I find the misrepresentations alleged by the Defendant in this case to be decidedly within the claims which fall within the ambit of section 523(a)(2)(A). These misrepresentations do not qualify as "respecting the debtor's . . . financial condition" under section 523(a)(2), and thus do *not* require a writing per section 523(a)(2)(B). As such, the Complaint survives this threshold issue. With this settled, I turn to an analysis of the adequacy of the Plaintiff's claim.

### 6. The elements of fraud under common law

To construe the elements of section 523(a)(2)(A), I look to the common law of torts. *Alicia,* 230 B.R. at 500 (citing *Field v. Mans,* 516 U.S. 59, 70 (1995); *Palmacci v. Umpierrez,* 121 F.3d 781, 786 (1st Cir. 1997); *In re Apte,* 96 F.3d 1319, 1325 (9th Cir. 1996)). Section 525 of the Restatement on Torts sets forth the requisite elements of fraudulent misrepresentation:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

*Restatement (Second) of Torts §525.* Clearly stated, the elements of a common law fraud claim are: 1) a false representation, 2) fraudulent intent (scienter), 3) intent to induce reliance, 4) actual reliance, 5) justified reliance, and 6) damages (pecuniary loss). *Palmacci,* 121 F.3d at 786.

I begin and end this analysis with the element of damages, as I find that the Complaint falls short of its pleading requirement with respect to damages, thus failing to sufficiently state a claim.

**7. Generac's pleading of damages is insufficient**

Generac makes no specific or general estimate of the damages it has incurred as a result of the alleged misrepresentations. The only language offered by Generac to describe damages caused by Dato's alleged misrepresentations is as follows:

> As a result of Dato's fraud, Generac was induced to forbear from pursuing its legal remedies against Dato and Complete Power, including foreclosing on Generac's security interest in Complete Power's inventory. If Generac had not been induced to forbear, *Generac would have vigorously pursued its legal remedies.*

Second Amended Complaint at 6-7 (emphasis added). The Complaint begs the critical question: Had Generac not been "induced to forbear from pursuing its legal remedies against Dato," as the Complaint alleges, what difference would it have made? That is to say, what percentage, if any, of the total debt owed to Generac, accumulated over the course of their business relationship dating back to 2005, would likely have been recovered had Generac "vigorously pursued its legal remedies" in lieu of signing the Agreement on August 28, 2007?

It seems unlikely that Generac would have had any more luck collecting from Dato by "vigorously pursuing [the] legal remedies" available to it prior to bankruptcy than it will have pursuing its rights as a creditor in this bankruptcy proceeding, for a few reasons. First, at the time of signing the Agreement, Generac alleges, as a basis for its claim of fraudulent misrepresentation, that the inventory of generators in question was *no longer titled to Complete Power*. Second Amended Complaint at 6. Given this allegation, the Complaint fails to explain

how Generac's option to foreclose on Complete Power's inventory would have borne any fruit, as Complete Power did not have title or ownership of said inventory by that point in time. Additionally, it seems likely that any actions by Generac to demand payment in full in August of 2007 would only have accelerated Dato down the path to a voluntary bankruptcy filing, which ultimately occurred approximately 10 months after the Agreement was signed.

It is not my responsibility to attempt to hypothesize damages never adequately alleged. I offer this extra analysis only to highlight the fact that Generac's failure to adequately allege damages is not for lack of opportunity. In fact, Generac had many opportunities to fine-tune its complaint. *See* the Complaint [DE 1], First Amended Complaint [DE 16], Second Amended Complaint [DE 32], Response to Motion to Dismiss [DE 45], Sur Response to Motion to Dismiss [DE 54]. In fact, Dato plainly highlights the deficiency of Generac's alleged damages claim in the Motion, and Generac fails to address the issue in its Response [DE 45] or in its Sur Response [DE 54], despite using both of these responses as an opportunity to refine or restate many other elements of the Complaint.

Federal Rule of Bankruptcy Procedure 7012, adopting Federal Rule of Civil Procedure 12, authorizes the court to dismiss a complaint that fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Accordingly, since the Complaint fails to allege the nature and extent of the damages arising from the Defendant's conduct, it is **ORDERED** that:

1. The Defendant's Motion [DE 41] is **GRANTED**.
2. The Second Amended Complaint [DE 32] is **DISMISSED**.

###

Copies furnished to:

Patrick Scott, Esq.

Mr. Scott is directed to serve a conformed copy of this Order on all other interested parties.